UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
NATALIE WINTERFIELD,

                Plaintiff,                    Docket No.:

    -against-

                                              **COMPLAINT**

VICTORIYA DOSTOVA, ALLIED HEALTH GROUP
LLC, VNS HEALTH.ORG., P.O. MUNEMUR CHOWDHURY,
P.O JOHN DOE, intended to be the Officer in Charge from
the 19th Precinct of the NYC Police
Department who was present, ordered and supervised    Jury Trial
the Plaintiff's arrest on April 30, 2024, believed               Demanded
to be NEIL ZUBER; and THE CITY OF NEW YORK,

                Defendants.
-----------------------------------------------------------------------X

      Plaintiff, by her attorney, complaining of the Defendants alleges as follows:

## THE PARTIES

1. At all times hereinafter mentioned, Plaintiff is a citizen of New York.

2. Upon information and belief, at all times hereinafter mentioned, including on or after April 30, 2024, Defendant VICTORIYA DOSTOVA ("DOSTOVA") is a citizen of the State of Florida.

3. At all times hereinafter mentioned, Defendant DOSTOVA was a registered nurse, licensed by the State of New York.

4. At all times relevant herein, the Defendant DOSTOVA was an employee or agent of the Defendant ALLIED HEALTH GROUP.

5. At all times hereinafter mentioned, Defendant DOSTOVA was and is, as well as acted as an employee and/or agent of the Defendant ALLIED HEALTH GROUP and/or VNS HEALTH. ORG formerly VNSNY, LLC.

6. At all times hereinafter mentioned, Defendant ALLIED HEALTH GROUP, LLC ("ALLIED") is a domestic corporation with its principal place of business in Kings County New York.

7. At all times hereinafter mentioned, Defendant ALLIED HEALTH GROUP, LLC ("ALLIED") is a foreign corporation with its principal place of business in Kings County New York.

8. At all times hereinafter mentioned, Defendant ALLIED HEALTH GROUP, LLC ("ALLIED") is a domestic limited liability corporation with its principal place of business in Kings County New York.

9. At all times hereinafter mentioned, Defendant ALLIED is a business entity located at 1723 East 12th Street, Brooklyn, New York.

10. At all times hereinafter mentioned ALLIED was and is a healthcare staffing agency, providing, inter alia, registered and other professional nursing services.

11. At all times hereinafter mentioned, Defendant VNS HEALTH.ORG formerly VNSNY ("VNS") was and is 501(C)3 corporation organized and existing under the laws of the State of New York.

12. At all times hereinafter mentioned, Defendant VNS HEALTH.ORG was and is a New York domestic business corporation existing

under the laws of the State of New York.

13. At all times hereinafter mentioned, including April 30, 2024 and May 1, 2024, Defendant MUNEMUR CHOWDHURY ("CHOWDHURY") was and is a New York City police officer.

14. At all times hereinafter mentioned, Defendant CHOWDHURY was acting as an agent, servant and/ or employee of the City of New York.

15. At all times hereinafter mentioned Defendant CHOWDHURY was a citizen of the State of New York.

16. At all times hereinafter mentioned including April 30, 2024 and May 1, 2024, Defendant, DEPUTY INSPECTOR JOHN DOE, intended to be the Commanding Officer of the 19th Precinct in the NYC Police Department who was present during the Plaintiff's arrest in her mother's home on April 30, 2024.

17. At all times hereinafter mentioned Defendant DEPUTY INSPECTOR JOHN DOE was a citizen of the State of New York

18. At all times hereinafter mentioned, Defendant DEPUTY INSPECTOR JOHN DOE was acting as an agent, servant and/ or employee of the City of New York.

19. Upon information and belief Defendant John Doe is in fact DEPUTY INSPECTOR NEIL ZUBER ("ZUBER").

20. At all times hereinafter mentioned, Defendant The City of New York is a municipal corporation, duly organized and existing under and by

virtue of the laws of the State of New York.

21. On or about the 29th day of July 2024, pursuant to New York GML 50(e), the Plaintiff served a notice of claim upon The City of New York.

22. On the 21st day of November 2024, the Defendant CITY conducted a municipal hearing pursuant to GML 50-(h).

23. More than sixty days have elapsed since said hearing and the claim has neither been adjusted nor settled and this action is being commenced within one year of the occurrence complained of and is thus timely brought.

## JURISDICTION AND VENUE

24. That the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

25. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331, 1332 and 1343, as this case involves, among other things, violation of the Civil Rights Law, 42 U.S.C.1983 and 1988.

26. Venue is properly placed in the United States District Court for the Southern District of New York because the occurrence took place here, the Plaintiff resides here, a significant number of witnesses are located here, and this is the most convenient place for the trial of this action.

## THE UNDERLYING FACTS

27. At all times relevant herein, and on or about April 30, 2024, the

Plaintiff resided at 401 East 81st Street, Apt. 7D, New York, New York 10028.

28. On or about April 30, 2024 the Plaintiff's mother Victorine Winterfield (then age 90) resided at 401 East 81st Street, Apt 8D, New York, New York.

29. As of April 30, 2024 and for many years prior, the Plaintiff was an educator of inter alia, foreign languages, providing tutoring services to students and teaching at various schools within the City of New York.

30. On and prior to April 30, 2024, the Plaintiff was a caregiver of homecare services to her elderly mother pursuant to a program known as New York Consumer Directed Personal Assistance Program (CDPAP), for which she was paid a salary under the New York State Medicaid Program.

31. In addition, at all times relevant herein prior to April 30, 2024, pursuant to inter alia, the New York State Medicaid program, the Plaintiff's mother was also eligible for in-home health aids sent by agencies.

32. At all times relevant herein, the Plaintiff's mother was suffering from inter alia, age related Alzheimer's dementia, a major neurocognitive disorder.

33. At all times relevant herein the Plaintiff's mother would suffer bruising from falls and from accidentally bumping into common

household objects or furniture.

34. At all times relevant herein the Plaintiff's mother had a medical history of scratching herself causing open wounds and sores all over her body, (excoriation disorder) for which Victorine's Winterfield's medical doctor had prescribed creams, other treatments and specific preventative measures.

35. On April 30, 2024 at approximately 1:00 pm, the Plaintiff was speaking to Defendant DOSTOVA by "DOXY call" initiated by DOSTOVA received on the Plaintiff's cell phone pursuant to a request by Plaintiff to VNS for home aide services to supplement those hours of service provided by the Plaintiff to her mother under her CDPAP designation.

36. At the time of the DOXY call the Plaintiff was in the apartment in which her mother resides (401 East 81 Street, New York, NY 10028, Apt. 8D).

37. Upon information and belief DOXY is a telemedicine platform for use by health care clinicians such as Defendant DOSTOVA.

38. Upon information and belief, the connection between Plaintiff and Defendant's devices during the aforesaid DOXY call was choppy and inconsistent.

39. Upon information and belief, after the connection for the DOXY call of April 30, 2024 disconnected/dropped within approximately ten minutes of the start of the call, Defendant DOSTOVA did not

seek to re-establish the call to continue the teleconference between herself and the Plaintiff.

40. The Plaintiff attempted to re-establish the "DOXY" call without success.

41. At no time during the DOSTOVA/Plaintiff "DOXY" call did Defendant DOSTOVA ask why the Plaintiff's mother had skin abrasions, bruises and sores on her face, arms and legs or any other body parts.

42. Upon information and belief, the Defendant DOSTOVA recorded the teleconference between herself and the Plaintiff.

43. Prior to April 30, 2024, upon information and belief the Defendant DOSTOVA had never performed a physical examination of the Plaintiff's mother, by telemedicine evaluation or otherwise.

44. Prior to April 30, 2024, the Plaintiff's mother had been diagnosed by her treating physicians with a. major neurocognitive disorder, believed to be Alzheimer's Disease.

45. In addition, prior to April 30, 3024, it was known by the geriatric physician treating the Plaintiff's mother and as recorded in her medical records, that she inter alia, suffered from conditions that led to bruising, sores and scratches, as well as other excoriation of the skin.

46. Prior to April 30, 2024, upon information and belief the Defendant DOSTOVA had never actually spoken to the Plaintiff's mother.

47. Upon information and belief, prior to April 30, 3024, the Defendant DOSTOVA had never discussed the condition of Victorine Winterfield with the Plaintiff.

48. Upon information and belief, on April 30, 3024, the Defendant DOSTOVA, acting as an agent and/or employee of the co-Defendants ALLIED and/or VNS HEALTH contacted the New York City Police Department claiming, inter alia, that she had personally witnessed the Plaintiff physically assaulting her elderly mother, Victorine Winterfield.

49. Upon information and belief, on April 30, 2024, the Defendant DOSTOVA or a member of the NYC Police Department called the NYC Emergency Medical Services to report that Victorine Winterfield needed of emergency medical assistance.

50. On April 30, 2024 Defendant DOSTOVA did not contact the Social Worker assigned at Mount Sinai Hospital to Victorine Winterfield, before contacting New York City governmental entities, including the NYC Police Department.

51. Upon information and belief, after the call between Plaintiff and DOSTOVA was ended, the Defendant DOSTOVA contacted the NYC Police Department and claimed to be an eyewitness to the Plaintiff beating her mother when Defendant DOSTOVA knew or should have known no such assault had ever occurred.

52. Upon information and belief, at no time did the Defendant

DOSTOVA submit a sworn written statement or a sworn verbal statement accurately describing the events she is alleged to have seen during her video call with Plaintiff on April 30, 2024.

53. Upon information and belief, as a result of the actions of the Defendant DOSTOVA, the police, including Defendant Zuber, came to the home of the Plaintiff's mother, minutes after the "DOXY" call had dropped and when the Plaintiff opened the door, the police entered the home without permission or a duly issued warrant.

54. Prior to entering the Plaintiff's home on April 30, no member of the New York City Police Department advised the Plaintiff for the reason for the interaction or the basis for entering the Plaintiff's mother's home.

55. After the unprivileged entry to the Plaintiff's mother's home, members of the Defendant's police department, including Defendant CHOWDURY restrained the Plaintiff, while other police officer's including ZUBER sought out the Plaintiff's mother in a bedroom of the apartment.

56. On April 30, 2024, a member of the NYC Police Department, believed to be the officer then in charge, without the Plaintiff present, and without knowledge of the Plaintiff's mother's mental or underlying health status, attempted to interview Victorine Winterfield despite, her age and the fact that she suffered *inter*

*alia*, from Alzheimer's disease.

57. The Plaintiff's mother was thereafter removed from her own apartment and upon information and belief was taken to Lenox hill Hospital, without the consent of the Plaintiff who held both a Power of Attorney and Health Care Proxy.

58. The Plaintiff was removed by the police in handcuffs to the 19th Precinct, thereafter to Central Booking, later Bellevue Hospital and then back to Central Booking, until being released upon her own recognizance, without bond.

59. Upon information and belief the Defendant's agents and/or employees, whose identities are presently unknown to the Plaintiff obtained a Court Order barring the Plaintiff from having any contact with her mother, including her role as Attorney in Fact and Health Care Proxy.

60. Upon information and belief, the order of protection was based upon the false allegations by DOSTOVA that the Plaintiff had physically assaulted, battered and endangered her 90-year-old mother, Victorine Winterfield.

61. As a result of the actions of the Defendants, the Plaintiff was forced to retain counsel at her own expense to defend against the false, spiteful and malicious charges brought against her.

62. The Plaintiff was charged with multiple felony counts alleging in essence that the Plaintiff had intentionally caused harm to her

mother Victorine Winterfield.

63. On or about July 16, 2024, all charges were dismissed against the Plaintiff for "insufficient evidence."

## AS AND FOR A FIRST CLAIM FOR RELIEF AS AGAINST DEFENDANTS DESTOVA and ALLIED and VNS

## [VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS BY CAUSING HER FALSE ARREST AND MALICIOUS PROSECUTION].

64. Defendant DOSTOVA acting as agent and/or employee of the Defendants VNS and/or ALLIED violated the Plaintiff's rights under the United States Constitution and New York State Constitution by falsely claiming that DOSTOVA had actually witnessed the Plaintiff's alleged injury causing assault upon Victorine Winterfield, without any factual basis, and despite actual knowledge that such allegations were false and were made maliciously to intimidate and punish the Plaintiff.

65. At no time did the City of New York through its agencies or Police Department obtain a sworn statement from DOSTOVA or co-Defendants VNS and/or ALLIED attesting to an actual injury causing assault by the Plaintiff upon her elderly mother.

66. At no time did any member of the NYC Police Department or any municipal or other governmental agency witness the Plaintiff strike or cause any injury to Victorine Winterfield.

67. Upon information and belief the wrongful actions by the Defendants DOSTOVA, VNS and ALLIED, were done under Color of State Law.

68. The Defendant police officers and the Municipality also interacted with

the Plaintiff under Color of State Law.

69. By reason of the foregoing, Plaintiff's arrest and detention was therefore without any justification or probable cause and violate her rights under the Fourth Amendment of the United States Constitution and Article 1, Section 12 of the Constitution of the State of New York.

70. Plaintiff's arrest by the agents and/or employees of the Defendant VNS and the City of New York was also made in violation of the rights secured by the United States and the New York State Constitutions, all of whom were acting under Color of State Law and therefore the Plaintiff has a right to bring this claim under 42 USC § 1983.

71. Plaintiff's arrest and detention occurred without any justification or probable cause and violated her rights under the Fourth Amendment of the United States Constitution, and because the Defendants were acting as police officers under Color of State Law, did so without any objective evidence or even reasonable cause to believe a crime had been committed.

72. As a result of her false arrest and subsequent imprisonment, Plaintiff was caused to hire an attorney and incur attorneys' fees and other expenses.

73. During her arrest and detention, the Plaintiff was caused to suffer severe and permanent personal injuries, including re-fracture and injury to her right arm causing extreme pain. especially while handcuffed, suffering; mental anguish and distress; psychological injury; requiring hospital and

medical care and attention, and which may require such care and attention in the future; required physical and occupational therapy; was unable to attend to her usual duties, leisure activities and vocation; has become partially disabled; has suffered mental anguish and distress, required medical care and treatment, required psychological cand psychiatric care and treatment and will require such care and treatment in the future.

74. In addition as a result of the improper, unreasonable and illegal actions of the Defendants, the Plaintiff's occupation as a caregiver to her mother under CDPAP and as an educator, has been adversely affected; Plaintiff's personal and professional reputation has been harmed; Plaintiff suffered emotional harm and mental anguish and distress; Plaintiff suffered further anguish by being forbidden by restraining order (until vacated) from having contact with her elderly mother who suffers from dementia, and Plaintiff has been otherwise damaged, all of which damages are permanent in nature and continuing into the future.

## AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST THE DEFENDANTS VICTORIYA DOSTOVA, ALLIED HEALTH GROUP, LLC, and VNA HEALTH

75. The Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs numbered "1" to "74" as if fully set forth herein.

76.    The Defendant DOSTOVA acting as agent for co-Defendants ALLIED and/or VNS were negligent in causing the arrest, detention and harm to the Plaintiff without knowledge of the actual social history, medical history and/or

medical conditions suffered by VICTORINE WINTERFIELD, before concluding that the Plaintiff had harmed her mother and that any bruises, scratches or other apparent injuries were not self-inflicted by VICTORINE WINTERFIELD due to her age, physical condition, neurological condition, mental condition and status.

77. The Defendant DOSTOVA acting as agent for co-Defendants ALLIED and/or VNS was negligent in alleging to government officials that the Plaintiff constituted an immediate threat of physical injury to VICTORINE WINTERFIELD sufficient to cause the Plaintiff to be arrested and suffer the consequences alleged herein.

78. The Defendant DOSTOVA acting as agent for co-Defendants ALLIED, and/or VNS knew or should have known from the available medical notes provided by VNS, that conducting any factual interview of VICTORINE WINTERFIELD and relying thereon to take adverse actions was negligent, violated the Laws of the State of New York, including its Public Health Laws and departed from accepted practice of nursing, medicine and/or social work standards and were reckless and deviated from standards of decency.

79.    The actions by the Defendant DOSTOVA were not privileged because they were done in retaliation and bad faith because the Plaintiff and her mother did not desire to, nor would they consent, to have her mother live with a full-time home aide in the Plaintiff's mother's home.

80. As a result thereof, the Plaintiff suffered injury as aforesaid.

**AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST THE DEFENDANTS MUNEMUR CHOWDHURY, P.O.,JOHN DOE, intended to be the Officer in Charge from the NYC 19th Precinct of the NYC Police Department who was present and supervised the Plaintiff's arrest on April 30, 2024, believed to be NEIL ZUBER and THE CITY OF NEW YORK.**

81. The Plaintiff repeats and reiterates the allegations contained in the preceding paragraphs numbered "1" to "80" as if fully set forth herein.

82. The Defendant police officers, acting within the scope of their employment by the CITY OF NEW YORK, were negligent on April 30, 2024 by failing to interview the Plaintiff with respect to her mother's medical and mental condition before conducting any interview of VICTORINE WINTERFIELD in the absence of the Plaintiff.

83. The Defendants were therefore negligent, reckless and deviated from standards of practice and decency in the manner in which they conducted their "investigation" of the facts inside the Plaintiff's apartment before depriving the Plaintiff of her liberty, in arresting the Plaintiff without a warrant and for unsupported charges.

84. As a result, thereof, the Plaintiff suffered injury as aforesaid.

Wherefore and by reason of the foregoing the Plaintiff demands judgment against the Defendants jointly and severally and demands judgment against the Defendants VICTORIYA DOSTOVA, ALLIED HEALTH GROUP, LLC, and VNS HEALTH.ORG. for all of the compensatory damages to which she may be entitled in an amount not to exceed the sum of $7,000,000.00 (SEVEN MILLION DOLLARS), as well as exemplary damages in an amount to be determined by the jury, plus interest and costs and the Plaintiff is entitled to recover all damages, including actual and punitive damages, interest, costs and attorney's fees, pursuant to 42 U.S.C.1983 and 42 U.S.C. 1988 against the Defendants MUNEMUR CHOWDHURY, P.O. JOHN DOE, intended to be the Officer in

Charge from the NYC 19th Precinct of the NYC Police Department who was present and supervised during the Plaintiff's arrest on April 30, 2024; and THE CITY OF NEW YORK, with such other relief as may be determined to be just and supported by the facts to be adduced at trial.

Dated: New York, New York
April 25, 2025

               Yours etc.,

               BRADLEY A. SACKS, ESQ.

               *[signature]*

               Attorney for Plaintiff
               225 Broadway – Suite 2410
               New York, NY 10007
               Tel. (212) 349-6171

## VERIFICATION

NATALIE WINTERFIELD, being duly sworn deposes and says:

That she is the Plaintiff in the within action and that she has read the foregoing **COMPLAINT** and knows the contents thereof; that the same is true to his own knowledge, except as to those matters stated therein to be alleged upon information and belief and as to those matters, she believes them to be true.

*NATALIE WINTERFIELD*

Sworn to before me this 25th of April, 2025

*Jenna Hunter*
Notary Public

JENNA HUNTER
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01HU6220836
Qualified in New York County
Commission Expires April 19, 2026